

# In the
# Missouri Court of Appeals
## Western District

IN THE MATTER OF EVERGY METRO, INC., D/B/A EVERGY MISSOURI METRO'S REQUEST FOR AUTHORITY TO IMPLEMENT A GENERAL RATE INCREASE FOR ELECTRIC SERVICE,

    Respondent;

MISSOURI PUBLIC SERVICE COMMISSION,

    Respondent,

    v.

OFFICE OF PUBLIC COUNSEL,

    Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

WD86023

OPINION FILED:
AUGUST 22, 2023

**Appeal from Public Service Commission**

**Before Division One: Gary D. Witt, Chief Judge, Presiding, Mark D. Pfeiffer, Judge, Anthony Rex Gabbert, Judge**

The Missouri Office of the Public Counsel ("OPC") appeals the December 8, 2022, Amended Report and Order ("Amended Order") issued by the Missouri Public Service Commission ("Commission") in a rate case filed by Evergy Missouri West, Inc. ("Evergy"). OPC asserts three points of error on appeal. OPC contends the Commission erred in ordering an eight-year amortization period for the remaining net book value ("NBV") of the Sibley Generating Station ("Sibley") stating, 1) the Commission's decision is arbitrary, capricious, and/or unreasonable, and arguing that the eight-year

amortization is not supported by substantial and competent evidence on the whole record, is contrary to the overwhelming weight of the evidence in the record, and is based on the Commission's "gut feeling" and "mere surmise," 2) the Commission's decision is arbitrary, capricious, and/or unreasonable because the eight-year amortization was made with the specific intention to allow Evergy to circumvent the statutory rate limitations designed to protect consumers, which thereby nullifies those protections in clear contravention of legislative intent, and 3) the Commission's decision is unlawful and unreasonable in violation of the OPC's right to due process of law in that the Commission allowed Evergy to advance a new position for the first time after the close of the evidentiary hearing and then ruled on that request without giving the OPC an opportunity to present any factual evidence or legal argument.  We affirm.

## Factual and Procedural Background[1]

The Commission is the state agency responsible for the regulation of public utilities in Missouri.  Evergy is an electric corporation and public utility that generally serves customers in the western and northwestern counties of Missouri.  The OPC represents ratepayers in proceedings before the Commission and on appeal of the Commission's orders.

On January 7, 2022, Evergy filed tariff sheets designed to increase its electric base rates by approximately 27.7 million (or 3.85%).  To allow sufficient time to study the

---

[1] We rely heavily herein on the Commission's Findings of Fact in explaining the Factual and Procedural Background.

effect of the tariff sheets and to determine if the rates established by those sheets were just, reasonable, and in the public interest, the tariff sheets were suspended until December 6, 2022. Numerous issues were raised in the general rate case that followed. An eight-day evidentiary hearing was held from August 31 to September 9, 2022. Ten parties intervened. On various dates before and during the evidentiary hearing, the parties submitted four stipulations and agreements, which were approved by the Commission. Only one of the issues ultimately decided by the Commission is addressed in this appeal. It involves the amortization treatment of the unrecovered investment in Sibley.

Sibley was a coal-fired power-generating plant consisting of three units built during the 1960s. Sibley underwent significant retrofits following its initial construction that extended the depreciable life of Sibley to 2040. The first occurred in 1991 when the plant was converted to burn low-sulfur coal. The second was the installation of scrubbers to Unit three in 2009. During the time period of January 2015 through November 2016, Sibley Unit 3 supplied 35% of Evergy's energy needs.

The estimated useful life of Sibley is included in rates in part through depreciation calculations. Depreciation, as applied to depreciable electric plant, means the loss in service value not restored by current maintenance, incurred in connection with the consumption or prospective retirement of electric plant in the course of service from causes which are known to be in current operation and against which the utility is not protected by insurance.

The depreciation study filed in February 2016 in Evergy's rate case was based on the assets in service as of December 31, 2014. The 2014 Depreciation Study included a projected end of depreciable life date of December 31, 2019, for Sibley Units 1 and 2, and December 31, 2040, for Unit 3 and the Sibley common plant. Evergy's 2012 Integrated Resource Plan ("IRP") showed the retirement of Sibley Units 1 and 2 occurring in 2017 as part of Evergy's Preferred Plan. Evergy's 2017 IRP Annual Update showed that the retirement of Sibley Units 2 and 3 by 2019 reflected the lowest cost plan from a net present value of revenue requirement ("NPVRR") perspective. Those retirements on that timeline would result in a savings of $282 million over the 2016 IRP. Evergy's modeling for the 2017 IRP Annual Update showed that retiring Sibley Unit 3 reduced costs for Evergy customers across all 18 modeled scenarios—regardless of load, gas price, or carbon-dioxide price assumption. Evergy determined through the IRP process that the retirement of Sibley would reduce the long-term NPVRR and therefore reduce costs to customers going forward as opposed to continuing to operate the plant.

In January 2018, Evergy filed a general rate case which included Sibley in rate base as the plant was in operation and expected to be in operation at the true-up date of that rate case, June 30, 2018. Evergy's 2018 IRP, filed in April of that year, states that Sibley Units 2 and 3 would retire at the end of 2018. On September 5, 2018, Unit 3 tripped and went off-line due to a turbine vibration event. Evergy made a required non-case related filing in the Commission's Electronic Filing and Information System on September 6, 2018, and a follow-up non-case related filing on September 12, 2018,

indicating that a preliminary analysis showed the likely impact of the turbine vibration was a repair costing over $200,000. A subsequent root case analysis of the Sibley Unit 3 turbine vibration event determined that the time and expense to repair the unit was estimated at $2.21 million. Evergy estimated that $54 million in capital costs would have been required to keep Sibley operational in the short term, and operation and maintenance costs to keep Sibley operational would have been $28 million per year. The costs to keep Sibley in operation exceeded the benefits. On November 13, 2018, Evergy retired Sibley.

Sibley provided service for fifty to sixty years, representing the major portion of the expected life of the assets. At the time of retirement, the majority of remaining NBV was related to the 1991 and 2009 environmental retrofits. NBV is the initial plant in service amount less accumulated depreciation. Increasing the accumulated depreciation reserve reduces NBV and return, while decreasing the accumulated depreciation reserve would increase NBV and return. Generally, the accounting for removal from plant-in-service upon retirement would be to credit the book value of the asset and debit the accumulated reserve. Subsequent to the completion of the 2018 general rate case, and due to the timing of the Sibley retirement, OPC and Midwest Energy Consumers' Group ("MECG") filed a request for an Accounting Authority Order ("AAO") to create a regulatory deferral account for costs and revenues related to Sibley. The Commission granted the AAO request. In the present case, the parties presented three amounts representing the unrecovered NBV of Missouri jurisdictional Sibley plant ranging from $145.2 million to $300 million at June 30, 2018.

The Commission determined that the total amount of the Sibley plant properties regulatory asset is $182,253,675. This amount consists of two values: (i) the NBV of the Sibley properties of $145,067,295 and (ii) decommissioning and dismantling costs associated with the retirement of the Sibley properties of $37,186,380. The amount of the Sibley regulatory liability is $105,659,315. The regulatory liability represents Sibley plant related costs paid by customers since Evergy's 2018 rate case that ended upon Sibley's retirement in November 2018 that are not being credited to customers.

This appeal regards the correct amortization period for the recovery of Sibley's unrecovered investment in the retired Sibley plant. Amortization is the gradual extinguishment of an amount in an account by distributing such amount over a fixed period. Four parties took positions on the amortization of the unrecovered investment in the Sibley plant and provided supporting testimony. As noted, the unrecovered Sibley investment is represented by the NBV of the Sibley plant and amounts to $182,253,675.

Commission Staff recommended netting the Sibley regulatory liability against the unrecovered investment in the Sibley plant and amortizing the balance over five years. Staff witness K.M. testified that "a relatively quick return" of the funds associated with the net regulatory asset to Evergy "mitigates the need for the 'return on' the amount." K.M. recommended that, "If the Commission includes a higher NBV or includes a lessor [sic] amount of regulatory liability from Case No. EC-2018-0200 as an offset to the NBV, thereby increasing the net regulatory asset, the Commission should consider lengthening

6

the amortization period to mitigate the rate impact." The NBV of Sibley was ultimately set higher by the Commission than the values recommended by Evergy and Staff.[2]

Evergy, OPC, and MECG all proposed that the amortization period for recovery of the unrecovered investment in the Sibley Units be based on the projected remaining life of the plant had it not been closed. However, each proposal varied in certain aspects.

MECG's witness, G.M., recommended a ten-year amortization period for the regulatory liability and a twenty-year amortization period with no return on the unamortized balance for the unrecovered investment in the Sibley Units.

Evergy's witnesses suggested that the proper amortization period for the unrecovered net investment in the Sibley plant be set at twenty years, consistent with the original planned life of Sibley Unit 3. Evergy also requested that the Sibley NBV recommended by Staff and Evergy be included in rate base.

OPC recommended recovery of the Sibley investment over a seventeen-year period, with no return on the investment. OPC explained in its initial post hearing brief that, "[g]iven that it will be December of 2022 by the time rates for this case go into

---

[2] The Commission stated that, while Evergy argued for a NBV of $145.7 million,

The Commission is not convinced that once Sibley was retired on November 13, 2018, it was appropriate for [Evergy] to shift Sibley's unrecovered depreciation to other steam properties. The effect of the reallocation proposed by [Evergy] is to allow future return on Sibley stranded costs that resulted from the early retirement of the properties to be included in future customer rates. The Commission finds the appropriate NBV at June 30, 2018, for the Sibley Units is $190,833,490.
…
The NBV at November 30, 2022, is $145,067,295.

effect, it can safely be said that there are approximately 17 years between the current date and when Sibley would otherwise have been retired."

Evergy witness D.I. testified that Commission decisions on the issues in these cases could result in a revenue requirement that exceeded the Compound Annual Growth Rate cap ("PISA" cap) and a performance penalty under Section 393.1655.3.

Initial post-hearing briefs were filed October 14, 2022, and reply briefs on October 21, 2022. The Commission issued an initial Report and Order on November 21, 2022. In that order, among addressing numerous other issues, the Commission set amortization for the unrecovered Sibley investment at four years. On December 2, 2022, the Staff of the Commission filed a motion for clarification which raised several questions of interpretation. On December 5, 2022, Evergy filed its response to Staff's motion, a request for reconsideration, and as an alternative to its reconsideration request, an application for rehearing. Evergy requested, in part, that the Commission order that the unrecovered Sibley plant investment be returned to it over eight years rather than the four years ordered in the initial Report and Order because the four years set by the Commission would result in a PISA performance penalty to Evergy of approximately $22 million and higher rates for consumers. No other party filed a request for reconsideration or rehearing of the initial Report and Order.

On December 8, 2022, the Commission issued an Amended Order to make changes to and address questions and areas of concern in the initial Report and Order.

The Amended Order supplanted the initial Report and Order and rendered the requests for rehearing of that order moot.

With regard to the issue presented in this appeal, the Amended Order states that the Commission disagreed with Staff that the unrecovered investment in Sibley should be reduced by the regulatory liability and the balance addressed in a single amortization. The Commission found it more appropriate and transparent to keep the two accounts distinct and amortize them separately. With regard to the regulatory liability which was collected from rate payers over approximately four years, the Commission noted that MECG and Staff both support an amortization period greater than four years. The Commission found no justification, however, to delay rate payer recovery, i.e. for rate payers to recover over a longer time frame than the four years in which the amount of the regulatory liability was collected.

With regard to the regulatory asset, the Commission noted that the length of an amortization is typically driven by how large an amount is being amortized, because of its impact on rates, and/or it may be tied to another factor, such as the regulatory liability amortization in this case being set at four years to mirror the period over which those amounts were included in rates. The Commission disagreed with Evergy that Evergy should receive a return *on* the unamortized balance over the time frame of the amortization period, finding that it was not appropriate to allow Evergy to continue to earn a return on a plant no longer in service and no longer used and useful. The Commission found OPC and MECG's recommendation that Evergy wait seventeen to

9

twenty years for a full return *of* its unrecovered investment, absent any return *on* those accounts, unreasonable however, and determined that Evergy should be allowed a return "as quickly as practicable".

The Commission found the regulatory asset not so large as to necessitate use of an extended seventeen to twenty-year amortization period, but noted that it was almost double the amount of the regulatory liability, which is to be recovered over a four-year period. The Commission found it appropriate, therefore, to set the amortization period for the unrecovered investment in Sibley at eight years. The Commission noted that it was mindful that Evergy elected PISA accounting in 2018, and Evergy's concern that the revenue requirement authorized in this case might push it over its PISA cap warranted consideration. The Commission concluded that, while there is no clear evidence as to whether a shorter recovery period would push Evergy over its PISA cap, extending the recovery of the regulatory asset over a period greater than the regulatory liability recovery period would decrease the risk of Evergy surpassing the PISA cap.

On December 16, 2022, OPC requested that the Commission reconsider its Amended Order or, in the alternative, order rehearing. OPC challenged the eight-year amortization period for the unrecovered Sibley investment. OPC argued that the eight-year number was raised for the first time by Evergy in its Motion for Reconsideration and that the request was made for the sole purpose of allowing Evergy to avoid legislatively

10

enacted rate limitations imposed by Section 393.1655,[3] a law to which Evergy

voluntarily subjected itself. OPC argued that the Commission's change of the

amortization period from four to eight years was unjust and unreasonable, a clear abuse

of discretion, not supported by competent and substantial evidence, a violation of the

Commission's own rules, and a violation of OPC's right to due process of law. On

January 4, 2023, the Commission denied OPC's application for rehearing.

This appeal follows.

## Standard of Review

All orders of the Commission are prima facie lawful and reasonable. § 386.270.

Judicial review of the Commission's orders and decisions is governed by Section

386.510. On review, an order of the Commission is presumed valid, and anyone seeking

to set aside an order has the burden of showing, by clear and satisfactory evidence, that it

is unlawful or unreasonable. *In Matter of Kansas City Power & Light Co.'s Request for

Auth. to Implement a Gen. Rate Increase for Elec. Serv. v. Pub. Serv. Comm'n*, 509

S.W.3d 757, 763 (Mo. App. 2016) (citation omitted) ("*KCPL*"). Review of the

Commission's Report and Order is two-fold. *Id.*

> First, we must determine whether the [Commission's] order was lawful. An
> order's lawfulness depends on whether the [Commission's] order and
> decision was statutorily authorized. When determining whether the order is
> lawful, we exercise independent judgment and must correct erroneous
> interpretations of the law. Because the [Commission] is purely a creature of
> statute, its powers are limited to those conferred by statute either expressly,

---

[3] All statutory references are to the Revised Statutes of Missouri, 2016, as currently updated.

11

or by clear implication as necessary to carry out the powers specifically granted.

Second, we must determine whether the [Commission's] order was reasonable. In determining whether the Commission's order is reasonable, we consider (1) whether it was supported by substantial and competent evidence on the whole record, (2) whether the decision was arbitrary, capricious, or unreasonable, and (3) whether the [Commission] abused its discretion.

*Union Elec. Co. v. Pub. Serv. Comm'n*, 591 S.W.3d 478, 484–85 (Mo. App. 2019) (citation and internal quotation marks omitted).

If substantial evidence supports either of two conflicting factual conclusions, we are bound by the findings of the administrative tribunal. The determination of witness credibility is left to the Commission, which is free to believe none, part, or all of the testimony. It is only where a Commission order is clearly contrary to the overwhelming weight of the evidence that we may set it aside. Additionally, with regard to issues within the Commission's expertise, we will not substitute our judgment for that of the Commission.

*KCPL*, 509 S.W.3d at 764 (citation and internal quotation marks omitted).

## Point I

In OPC's first point on appeal, it contends the Commission erred in ordering an eight-year amortization period for the remaining NBV of Sibley, stating the Commission's decision was arbitrary, capricious, and/or unreasonable because the eight-year amortization is not supported by substantial and competent evidence on the whole record, is contrary to the overwhelming weight of the evidence in the record, and is based on the Commission's "gut feeling" and "mere surmise."

12

OPC begins this point by arguing that, because Evergy itself suggested a twenty-year amortization period, it was arbitrary for the Commission to deem twenty years unreasonable and choose a less lengthy time frame. OPC acknowledges that, "Evergy did request the Commission authorize it to earn a 'return on' the Sibley asset," but argues the Commission should not have presumed Evergy would have only recommended a twenty-year amortization period if it was allowed to earn a return because, 1) Evergy never expressly made its amortization period position contingent on that assumption and, 2) Evergy should have known that it was not legally entitled to such. OPC finds the Commission's conclusion arbitrary because it "offers no explanation for why twenty years is not reasonable and it cites to no evidence in the record where any party argued that twenty years was unreasonable."

Yet, the reasonableness of a twenty-year amortization time frame is not before us. OPC has the burden of proving why the Commission's chosen eight-year amortization period was arbitrary, capricious, and/or unreasonable. Even if we were to determine that a twenty-year period was justifiable based on the parties' positions and evidence, such a determination would not necessarily mean that an eight-year period is arbitrary, capricious, and unreasonable. And, while OPC extensively sets forth the Commission's initial Report and Order, compares it to the Commission's Amended Order, and argues that the Commission has "clearly and unambiguously contradicted its own prior determination with no factual change in circumstance to justify it," and the "sudden and unsupported change in opinion is the very definition of arbitrary and capricious," the

13

Amended Order expressly supplants the initial Report and Order, rendering the initial Report and Order inappropriate for our consideration.[4]

Continuing the initial and Amended Order comparisons, OPC argues that, "viewed in isolation, the Sibley NBV being 'almost double the amount of the regulatory liability, which is to be recovered over a four-year period[,]' might seem like a rational basis for ordering an eight-year amortization, but it is not." OPC's reasoning is based on OPC's comparison of the Commission's initial Sibley NBV amortization determination of four years with the Amended Order's eight-years, and OPC's argument that the eight-year amortization period was chosen for the sole purpose of allowing Evergy to avoid the PISA rate cap. This is essentially an argument that the Commission's eight-year amortization is unjust and unreasonable not in its consequences, but in the method used to reach that decision. Indeed, OPC states in its reply brief: "The OPC is not asking this court to determine that an eight-year amortization period is wrong *per se* or that another number is better. Instead, the OPC is asking the Court to find that the Commission acted unreasonably because of **how** it reached the eight-year amortization period."

---

[4] We disagree with OPC's contention in its reply brief that, because the initial Report and Order is part of the whole record on appeal, we are required to consider it. "Unless an amended judgment shall otherwise specify, an amended judgment shall be deemed a new judgment for all purposes." Rule 78.07(d). The Commission's Amended Order expressly supplanted the initial Report and Order. While the initial Report and Order may technically be included in the record on appeal, it is only the Amended Order that was appealable and only the Amended Order that we have authority to render an opinion regarding.

14

The Commission's decision regarding the amortization issue was ultimately just one small piece of a very large general rate case wherein the parties identified forty-six main issues and more than 130 sub-issues requiring the Commission's attention.

> '[T]he Commission [is] not bound to the use of any single formula or combination of formulae in determining rates. Its rate-making function, moreover, involves the making of "pragmatic adjustments." And when the Commission's order is challenged in the courts, the question is whether that order "viewed in its entirety" meets the requirements of the Act. Under the statutory standard of "just and reasonable" it is the result reached not the method employed which is controlling. It is not theory but the impact of the rate order which counts. *If the total effect of the rate order cannot be said to be unjust and unreasonable, judicial inquiry under the Act is at an end.* The fact that the method employed to reach that result may contain infirmities is not then important. Moreover, the Commission's order does not become suspect by reason of the fact that it is challenged. It is the product of expert judgment which carries a presumption of validity. And he who would upset the rate order under the Act carries the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences.'

*State ex rel. Associated Natural Gas Co. v. Public Service Com'n of Missouri*, 706 S.W.2d 870, 873 (Mo. App. 1985) (quoting *Federal Power Commission v. Hope Natural Gas Co.*, 320 U.S. 591, 602-03, 64 S.Ct. 281, 287-88, 88 L.Ed. 333 (1944) (emphasis added). The Commission has broad discretion in rate-making matters and is not limited to adopting a party's specific position. *Empire Dist. Elec. Co. v. Pub. Serv. Comm'n*, 630 S.W.3d 887, 894 (Mo. App. 2021). Rather, its responsibility is to consider the evidence in the whole record, balance the utility investor's interests with the consumer interests and issue a rate order that is just and reasonable. *Id.* at 893. The OPC's challenges with

15

regard to "how" the Commission reached its decision fail to prove that the decision was unjust and unreasonable in its consequences.

The Commission's decision is, nevertheless, supported by the record. Staff recommended netting the asset and liability accounts before amortizing the resulting $12.4 million uncovered asset balance over a five-year period.[5] Staff witness K.M. who made this recommendation testified that, "[i]f the Commission includes a higher NBV or includes a lessor [sic] amount of regulatory liability from Case No. EC-2019-0200 as an offset to the NBV, thereby increasing the net regulatory asset, the Commission should consider lengthening the amortization period to mitigate the rate impact." The Commission found as a matter of fact: "Evergy witness [D.I.] testified that Commission decisions on the issues in these cases could result in a revenue requirement that exceeded the Compound Annual Growth Rate cap (PISA cap) and a performance penalty under Section 393.1655.3, RSMo, (Supp. 2021)." Where a performance penalty is triggered, rates have obviously been impacted. While OPC argues that it was unjust and unreasonable, arbitrary and capricious, for the Commission to choose an eight-year amortization period, the eight-year amortization period is between the five and twenty years recommended by the various parties who supported their positions with evidence,

---

[5] Prior to the administrative hearing, the OPC "adopted the position advanced by witnesses for the Commission's Staff."

and it mitigates the potential rate impact of a shorter amortization period.[6]

The Commission found that Evergy's twenty-year proposal was impacted by its request to receive a return *on* the Sibley investment. Evergy had argued that a return on Sibley was warranted because the decision to retire Sibley was prudent and reasonable. Evergy presented evidence that customers benefitted from Sibley's retirement versus keeping Sibley in-service and from the ability to provide reliable service without Sibley. Evergy believed that it was entitled to both the return of and a return on the undepreciated plant balance associated with Sibley, contending that Evergy should not be penalized for retiring the plant when the retirement benefitted customers, and arguing that a penalty would discourage utilities from doing the right thing on behalf of their customers.

The Commission agreed that the decision to retire Sibley was prudent, but refused a return on the Sibley asset because Sibley was no longer used and useful. However, the fact that Evergy was not allowed a return *on* the investment because the plant was not used and useful does not mean that its inability to receive such could not reasonably influence the Commission's decision to provide a return *of* the investment as soon as practicable while avoiding performance penalties.

Staff expressly took Evergy not receiving their requested return on the investment into consideration when making its recommendation. K.M. testified for Staff that the

---

[6] While OPC argues that the Commission "manipulated its own Staff's position" to reach the initial four-year amortization period because the Commission rejected netting the Sibley AAO liability and NBV asset, the reality is that Staff still proposed a five-year time frame for Evergy to recover the asset.

17

economic impact of Sibley should be shared between Evergy and customers. Further, Staff's recommendation allowed Evergy to receive a full "return of" the net regulatory asset but not a "return on" and, "a relatively quick return of the funds to the Company mitigate the need for the 'return on' the amount." After considering the various positions and evidence presented, the Commission concluded that, while it is not appropriate to allow Evergy to continue to earn a return *on* a plant no longer in service and used and useful, Evergy having to wait seventeen to twenty years for a full return *of* its unrecovered investment, absent any return *on* those accounts, was unreasonable.

Greater than a four-year amortization period for the Sibley regulatory liability was recommended by some parties. The Commission disagreed with those positions, determining that consumers should recover those amounts over the same time period they were charged. In balancing the interests of consumers with the utility, the Commission explained that, because the amount of the unrecovered Sibley investment is almost double the amount of the Sibley regulatory liability, which is to be recovered over a four-year period, an eight-year amortization period for the unrecovered Sibley investment is reasonable. While OPC argues that this justification is a façade to conceal the Commission's true intent of avoiding a performance penalty for Evergy, OPC offers no support for why the Commission's consideration of a PISA performance penalty in balancing consumer and utility interests is unreasonable.

Moreover, OPC's argument as to the method employed to reach its decision, i.e., that the Commission considered the potential impact of an amortization period that might

18

result in PISA rates caps being exceeded, ignores the Commission's authority to make "pragmatic adjustments" to reach its intended just and reasonable result. If the Commission reached the eight-year amortization decision because a different amortization period would result in an unintended collateral consequence, or a result deemed unfair and unjust by the Commission, it was within the Commission's discretion to choose an amortization time frame supported by the record that fit within the Commission's goals. The OPC has simply failed to meet its burden of proving that the eight-year amortization period is not supported by the record and is unjust and unreasonable.

Point one is denied.

## Point II

In its second point on appeal, OPC contends the Commission erred in ordering an eight-year amortization period for the remaining NBV of Sibley, stating that the Commission's decision was arbitrary, capricious, and/or unreasonable, because the eight-year amortization was made with the specific intent to allow Evergy to circumvent statutory rate limitations designed to protect consumers, which thereby nullifies those protections in clear contravention of legislative intent.

As discussed in the OPC's first point on appeal, the Commission's eight-year amortization period for the remaining NBV of Sibley is supported by the record. Further, no party, including the OPC, ever argued to the Commission that a PISA performance penalty should be imposed on Evergy, or that PISA statutes require the amortization

19

period for the remaining NBV of Sibley be such that it triggers a PISA performance penalty. Despite arguing on appeal that the Commission's decision purposefully allows Evergy to circumvent statutory rate limitations designed to protect customers "in clear contravention of legislative intent," OPC makes no claim that the Commission's decision was actually statutorily prohibited, i.e., unlawful.

OPC's argument primarily focuses on consumers' rights and benefits under the PISA statutes, suggesting that PISA performance penalties are mandatory in cases where they *could* be applied so as to effectuate legislative intent. This focus, however, ignores that the PISA statutes were not solely created for the benefit of consumers, and ignores that the Commission has a responsibility to balance the utility investor's interests with the consumer interests and issue a rate order that is just and reasonable to all parties. *See Empire Dist. Elec. Co.*, 630 S.W.3d at 893.

OPC specifically argues that the Commission should focus on addressing the questions before it based on the facts presented in the case, and if an electric utility exceeds its rate caps because the facts before the Commission dictate that result, the Commission should allow the performance penalty to occur. Yet, the Commission concluded that Sibley's closure was prudent. In discussing whether Evergy should earn a return *on* the investment, as requested by Evergy, the Commission stated:

> Historically, the Commission has distinguished between recovery based on prudent investment and recovery based on the asset being used and useful…While it is appropriate to allow a utility to recover amounts prudently invested in plant, allow it a return on amounts spent, the fact that an initial investment may have been prudent when made does not support

20

authorizing the Company to continue earning a profit/return on that investment when the plant in question is no longer used and useful.

However, as discussed in Point I, the inability to allow a return on the investment nevertheless impacted the Commission's decision regarding the amortization period for the regulatory asset:

> As previously addressed it is not appropriate to allow Evergy to continue to earn a return on plant that is no longer in service, no longer used and useful. So, the question before the Commission is whether it is appropriate to make Evergy wait 17 to 20 years for a full return of its unrecovered investment absent any return on those amounts. The Commission does not find this result reasonable. Evergy should be allowed a return of these amounts as quickly as practicable.

The Commission then reasoned that, as the regulatory liability is to be recovered over four years, and the regulatory asset is nearly double the regulatory liability, an appropriate amortization period for the unrecovered Sibley investment is eight years. The Commission additionally noted that it is "mindful that Evergy elected PISA accounting in 2018" and "Evergy's concern that the revenue requirement authorized in this case might push it over its PISA cap warrants consideration." Further, that "[w]hile there is no clear evidence as to whether a shorter recovery period would push Evergy over its PISA cap, extending the recovery of the regulatory asset over a period greater than the regulatory liability recovery period will decrease the risk of Evergy surpassing the PISA cap."

The Commission's ultimate decision in this case aligned with Staff's opinion via K.M.'s testimony that the economic impact of Sibley should be shared between Evergy

21

and consumers, and because Evergy was not allowed a "return on" the net regulatory asset, "a relatively quick return of the funds to the Company mitigate the need for the 'return on' the amount." K.M. testified that, providing a return on the net amounts would make Evergy "whole" with no impact of the risk of early retirements such as Sibley. Given this testimony, the Commission could have reasonably determined that setting the amortization period for the unrecovered Sibley investment such that it would trigger a PISA performance penalty of $22 million could effectively result in Evergy not being made whole and the economic impact of Sibley not equally shared between consumers and Evergy.[7]

OPC states that two major "constraints imposed" on a utility electing to make PISA deferrals are, 1) a temporary rate moratorium; and 2) rate recovery limits (or "caps"). §§ 393.1655.2,3,4. The rate caps are based on the "compound annual growth rate" of the utility's "average overall rate" and, if exceeded, "a performance penalty" is

---

[7] OPC discusses that utilities derive a benefit from electing PISA, but solely focuses on the rate moratoriums and rate caps placed on utilities as benefitting the consumer, ignoring the testimony in the record regarding additional benefits consumers derive from PISA. D.I., whom the Commission cited in its Findings of Fact in the Amended Order, testified that PISA under Section 393.1400 allows Evergy to use plant-in-service accounting to offset a portion of the negative lag associated with capital investments and also requires the Company to limit the growth of its rates to a compound annual growth rate of 3.0%. D.I. explained that the negative lag inherent in capital investments made it difficult for Evergy, as well as other Missouri electric utilities, to invest at the level needed to accelerate modernization of the electric grid for the benefit of customers. Reducing the negative lag has allowed Evergy to increase investment in its distribution system and other plant with the goal of improving the reliability of the system. PISA enabled these investments which are part of the Company's capital plan which was last filed with the Commission in February 2021. D.I. testified to several distribution system investments that are part of the Company's capital plan that are supported by PISA.

imposed. §§ 393.1655.3, 4. While OPC argues that the intent of the PISA statutes is to impose a penalty for exceeding the rate cap, the very nature of any penalty is to encourage compliance so as to avoid a penalty.

The PISA statutes themselves suggest a legislative preference for avoiding rate caps so as to prevent penalties. Section 393.1655.5 applies to a change in any rates charged under a rate adjustment mechanism approved by the Commission under Section 386.266 and 393.1030. It provides that, if a change in rates would cause an electrical corporation to exceed the rate caps established in Section 393.1655.3 and 4, the corporation shall reduce the rates charged under that rate adjustment mechanism in an amount sufficient to ensure the cap is not exceeded "and the performance penalties under such subsections are not triggered." Sums not recovered because of any rate reduction under this provision shall be deferred to and included in the regulatory asset arising under Section 393.1400 or, if applicable, under the regulatory and ratemaking treatment ordered by the Commission under Section 393.1400, and "recovered through an amortization in base rates in the same manner as deferrals under that section or order are recovered in base rates." *Id.* Where Section 393.1655 itself contains a provision that expresses a legislative preference for avoiding rate caps and penalties in a situation where penalties could otherwise be applied, OPC fails to prove the Commission "clearly thwarted the intent of the PISA rate cap statute (section 393.1655) when it arbitrarily adopted the eight-year amortization period" … "with the sole intention of ensuring that the rate cap was not exceeded[.]"

23

Because the eight-year amortization period is supported by the evidence, OPC fails to prove it was arbitrary. OPC additionally fails to prove that, if the eight-year period was selected with the intent to avoid PISA rate caps, the Commission thwarted legislative intent thereby making an arbitrary, capricious, and/or unreasonable decision.

Point two is denied.

**Point III**

In OPC's third point on appeal, OPC contends the Commission erred in ordering an eight-year amortization period for the remaining NBV of Sibley, arguing the Commission's decision was an unlawful and unreasonable violation of the OPC's right to due process of law, in that the Commission allowed Evergy to advance a new position for the first time in this case after the close of the evidentiary hearing and then ruled on that request without giving the OPC an opportunity to present any evidence or provide legal arguments. OPC argues that, in issuing the eight-year amortization period after receiving Evergy's Motion for Reconsideration, the Commission prevented the OPC from, 1) knowing what Evergy's true position was at the time when it could have issued discovery requests concerning that position or otherwise developed its case; 2) addressing the eight-year amortization in the testimony filed by the OPC's own witnesses; 3) cross-examining Evergy's witnesses regarding Evergy's "true" position; 4) presenting any other evidence to directly rebut Evergy's eight-year amortization request; and 5) addressing the eight-year amortization request in its briefing. OPC further argues that the Commission denied OPC a timely opportunity to respond to Evergy's new position because the Commission

24

ruled on Evergy's request three days after it was filed, in clear contravention of 20 CSR 4240-2.080(13) which states that parties "shall be allowed" ten days "to respond to any pleading unless otherwise ordered by the commission."[8]

"Due process requires that administrative hearings be fair and consistent with rudimentary elements of fair play." *Laclede Gas Co. v. Mo. PSC*, 593 S.W.3d 582, 597 (Mo. App. 2019) (internal quotation marks and citation omitted). "One component of this due process requirement is that parties be afforded a full and fair hearing at a meaningful time and in a meaningful manner." *Id.*

First, it is clear from the record that the eight-year amortization period was never Evergy's "true position." Evergy expressly states in its Motion for Reconsideration of the Commission's initial Report and Order that the four-year amortization period chosen by the Commission for return of the NBV of Sibley was "not advocated by any party in this proceeding." Neither was an eight-year period. Nevertheless, Evergy advises the Commission that it "carefully reviewed the Order and *wants to reach the goals and objectives that have been articulated by the Commission*." (Emphasis added). Evergy states that it recognizes the Commission's rationale for crediting the Regulatory Liability to customers over four years because rates were recovered from customers over the four prior years. Yet, while the Commission determined that Evergy should be allowed a

---

[8] OPC's complaint regarding Evergy's submission of a notice of intent to file a general rate case on December 2, 2022, was not preserved in OPC's Application for Rehearing as required by Section 386.500.2 and, therefore, not preserved for appeal.

return of the NBV of Sibley "as quickly as practicable" and to match the four-year return timeline of the Regulatory Liability, that this decision "results in a higher revenue requirement, and therefore a higher impact to customer rates, as well as a 'performance penalty' of approximately $22.0 million annually under Section 393.1655.3" of the PISA statute. This, Evergy indicated, would require Evergy to mitigate the detrimental financial impact of the performance penalty and file a general rate case with new rates. "A February 2023 rate case filing would alleviate the annual performance penalty for the Company but would leave West's customers with three full years of higher rates based on a higher revenue requirement as a result of the four-year amortization of the Regulatory Asset." Evergy opined that, because the Commission found Evergy's decision to retire Sibley to be prudent, it would appear the Commission did not intend to assess Evergy a penalty. Consequently, the "impact of shifting from a four-year amortization period to an eight-year amortization period equates to an annual reduction to revenue requirement of approximately 22.5 million per year, which is a significant benefit to customers, particularly during this period of high inflation." "In contrast, the higher revenue requirement resulting from a four-year amortization period for the unrecovered investment in the Sibley plant not only creates a higher revenue requirement for customers, it also imposes the performance penalty[.]" Evergy stated that, extending the Sibley regulatory asset amortization period from four to eight years more closely aligned recovery of the Sibley NBV with the record evidence.

26

Hence, it is apparent from Evergy's Motion for Reconsideration that the eight-year amortization period was never Evergy's "true position" and was instead a suggestion to the Commission to better effectuate the intent expressed in the Commission's initial Report and Order as aligned with the evidence. While the Commission found no clear evidence that a shorter recovery period would push Evergy over its PISA cap, it determined that extending recovery of the regulatory asset over a period greater than return of the regulatory liability would decrease this risk, thereby suggesting that the Commission never intended for the Sibley NBV amortization period to potentially trigger higher customer rates and a performance penalty.

Significantly, no party ever suggested an amortization time frame that would have exceeded the rate caps resulting in a performance penalty. OPC never argued, until after the Commission issued its initial Report and Order, that a performance penalty was a legislatively intended requirement based on the evidence in this case. And, while never contending that the four-year amortization period was actually supported by the facts and instead that, to reach the four-year time period the Commission engaged in "convoluted reasoning" suggesting "whimsical, impulsive, or unpredictable behavior that defines a capricious decision," the OPC now argues that, if Evergy exceeds its rate caps "because the facts before the Commission dictate that result the Commission should actually allow the performance penalty…instead of attempting to thwart the legislature's intent[.]"

Because an eight-year amortization time frame was always a possibility given the nature of the case and the evidence, the OPC was never deprived of addressing a shorter

27

amortization in the testimony filed by the OPC's own witnesses, cross-examining Evergy's witnesses to elicit an opinion regarding a shorter than Evergy's recommended twenty-year amortization period, cross-examining Evergy's witnesses to elicit Evergy's position if it was not granted a return on the investment, presenting other evidence to support or oppose a shorter than the OPC's recommended seventeen-year amortization period, or addressing a shorter amortization period in its briefing.

OPC additionally contends that the Commission infringed on the OPC's due process rights by violating 20 CSR 4240-2.080(13) which states that parties "shall be allowed" ten days "to respond to any pleading unless otherwise ordered by the commission."

Pursuant to 20 CSR 4240-2.015 (1), "A rule in this chapter may be waived by the commission for good cause." "[T]he determination of the 'good cause' for a waiver rests with the [Commission][.]" *State ex rel. Office of Public Counsel v. Public Service Com'n of State*, 236 S.W.3d 632, 637 (Mo. banc 2007). The authority for both 20 CSR 4240-2.080 and 20 CSR 4240-2.015 is Section 386.410. Section 385.410 states that, all hearings before the Commission or a commissioner shall be governed by rules to be adopted and prescribed by the Commission.

The initial Report and Order was issued November 21, 2022, with an effective date of December 6. Staff filed its request for clarification on December 2 stating that "good cause" existed to "expedite the response" so that Evergy, Staff, and other stakeholders could continue to work together to smoothly produce and review tariffs

28

complying with the Report and Order and prevent undue delay to the effective date of rates. Staff asked that an order be issued as soon as practicable. That evening, Evergy filed its compliance tariffs which had an effective date of January 1, 2023, along with a motion to expedite their effective date to no later than December 6, 2022. Staff and MECG contested this motion to expedite, and the Commission denied it. Evergy filed its Motion for Reconsideration and Application for Rehearing regarding the Commission's initial Report and Order on December 5, 2022.

On December 8, 2022, the Commission issued the Amended Order, noting that Staff raised several questions of interpretation in its motion, and Evergy's request for reconsideration involved "two areas of concern." The Commission stated that, "This *Amended Report and Order* makes changes to address many of the questions and areas of concern. No other party filed a request for reconsideration or rehearing." Further, that "[a]ll requests for rehearing" regarding the initial Report and Order "are moot as this *Amended Report and Order* supplants it."

Staff asserted that "good cause" existed for the Commission to "expedite" a response to its motion, and the Commission's "response" to both Staff's and Evergy's motions ultimately came in the form of the Amended Order. In issuing the response prior to the expiration of 20 CSR 4240-2.080(13)'s ten-day pleading response period, the Commission presumably determined that it was acting with good cause. OPC does not address "good cause" or the lack thereof for the Commission's waiver of 20 CSR 4240-2.080(13) at all in its briefing. Regardless, even if the OPC could prove that the

29

Commission was without good cause to issue an expedited response to the Staff's questions and Evergy's concerns, OPC suffered no prejudice.

The Commission's Amended Order wholly supplanted its initial Report and Order. OPC raised all of its objections to the Amended Order in its own Motion for Reconsideration and Application for Rehearing regarding that ruling. Exercising its right to appeal the Commission's decision under Section 386.510, OPC raises these same substantive issues in this proceeding. "After the [Commission] issues its final Report and Order, the only right afforded the parties is the right to seek rehearing." *Kansas City Power and Light Co.*, 509 S.W.3d at 784. Any party who believes it is aggrieved by that final Commission decision may seek rehearing and, if unsuccessful, may pursue appellate remedies under Section 386.500-.510. *State ex rel. Office of Public Counsel v. PSC*, 236 S.W.3d 632, 636 n.4 (Mo. banc 2007).

Point III is denied.

## Conclusion

OPC fails to meet its burden of proving the Commission erred in ordering an eight-year amortization period for the remaining NBV of Sibley in that, 1) OPC fails to show the Commission's decision is not supported by substantial evidence or is contrary to the weight of the evidence, 2) OPC fails to prove that the Commission's decision is arbitrary, capricious, and/or unreasonable if, when choosing the eight-year amortization period, the Commission took into consideration PISA rate caps and performance penalties, and 3) OPC fails to prove that it was denied due process.

The decision of the Commission is affirmed.

_____
Anthony Rex Gabbert, Judge

All concur.